IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
**3:04-cv-00467**

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION ) <br> ) <br>                     **Plaintiff,** ) <br> **and** ) <br> ) <br> **DAVID WISE,** ) <br>                **Plaintiff-Intervenor** ) <br> ) <br>                   **vs.** ) <br> ) <br> **FIRESTONE FIBERS & TEXTILES** ) <br> **COMPANY, A DIVISION OF BFS** ) <br> **DIVERSIFIED PRODUCTS, LLC,** ) <br> **BFS DIVERSIFIED PRODUCTS,** ) <br> **LLC, and BRIDGESTONE AMERICAS** ) <br> **HOLDING, INC.,** ) <br> ) <br>                   **Defendant.** ) <br> ) | **MEMORANDUM AND ORDER** |

       In this civil action for injunctive and monetary relief pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, Plaintiffs EEOC and David Wise ("Wise") assert that Defendant Firestone Fibers & Textile Company ("Firestone") and Defendant Bridgestone Americas Holding, Inc. violated Title VII of the Civil Rights Act of 1964, by terminating Wise rather than reasonably accommodating his religious needs (Doc. No. 1: Complaint at ¶ ¶ 10-14). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1343 and 1345.

       Presently before the Court is the defendants' motion for summary judgment (Doc. No. 18), and the response and reply briefs of the parties. Having considered the arguments set forth in the motion and responsive pleadings, as well as the affidavits, depositions and other evidence, the Court

will **Grant** the defendant's motion.

Taking the evidence in a light most favorable to the defendant, the Court finds first that Bridgestone Americas Holding, Inc. should be dismissed. It is a separate corporation which was not identified as a respondent in the original charge. The plaintiff is precluded from stating a claim against a defendant not named as a respondent in an EEOC charge. 42 U.S.C. § 2000e - 5(f)(1). Second, as to the merits, the Court finds that Firestone's efforts constitute reasonable accommodation of Wise's religious needs. Firestone was not required to provide absolute accommodation, only a reasonable one. Here it made significant efforts including but not limited to entering into a collective bargaining agreement ("CBA") with the United Steel Workers Union ("Union") in which was provided a neutral seniority system seeking accommodation of the religious and secular needs of employees as well as programs of annual leave, flexible holidays and shift-swapping. The fact that such accommodation failed to provide absolute resolution of the conflict is of no moment especially where as here, the plaintiff failed to take full advantage of the potential shift-swapping opportunities made available to him. The Court finds alternatively that to the extent Firestone did not accommodate the plaintiff, its failure was legally excused by the undo burden such accommodation would create. An agreed upon seniority system and shift-swapping program are significant accommodations. Firestone should not be required to deny the shift and job preferences of some employees to accommodate the religious observances of the plaintiff. Such a requirement would constitute an imposition on co-workers, a violation of the CBA, and the cost of such effort would be more than *de minimis*.

FACTUAL SUMMARY

A.      Firestone's Operation

Firestone maintains facilities in Kings Mountain and Gastonia, North Carolina. Employees are represented by a Union and the employer/employee relationship is governed by a CBA between Firestone and the Union. The CBA contains provisions governing employee vacations, holidays, leaves of absence, overtime, and seniority preferences including job transfers and shift changes. In case of layoffs, the CBA provides that employees lower in seniority will be "displaced" first.

Wise and all employees of his seniority working eight hour days were entitled to one-hundred and twenty hours of vacation, thirty-two hours of floating holidays (that had to be taken in full shifts), and sixty hours of unpaid leave pursuant to a "no-fault" attendance policy. Employees were permitted to take three half-days of vacation so long as their accumulated absences under the no-fault attendance policy did not exceed thirty-six hours. Wise was discharged in September 2002 for being absent from work for more than sixty hours in a twelve month period.

B. Wise's Faith and Employment at Firestone

Wise is a member of the Living Church of God, a Christian organization that believes in keeping the Old Testament laws, including observing the Sabbath day from sundown on Friday to sundown on Saturday, the High Holy days including the Day of Atonement, and the Feast of Tabernacles in the fall. Wise describes himself as a "Sabbath keeper." It is a tenant of Wise's faith that failure to observe Sabbath and Holy Day obligations would subject him to damnation in "the lake of fire."

Wise was hired in 1994 and usually worked the day shift until February 2002, at which time Firestone laid off approximately eighty employees based upon seniority. During layoffs, employees were given "bumping rights" wherein more senior employees were permitted to "bump" other employees out of desired positions. Wise had the least amount of seniority in the lab (Doc. No. 20:

3

Appx. 10, Wise TR at 77), thus eventually causing his replacement by a more senior employee and preventing him from transferring shifts pursuant to the seniority system in the CBA.

During the February 2002 layoff, a senior employee bumped Wise from his position. Around the same time as the layoff, Firestone reconfigured its shifts from twelve hour shifts to eight hour shifts: the "E" shift worked from 7:00 am to 3:00 pm, the "F" shift worked from 3:00 pm to 11:00 pm, and the "G" shift worked from 11:00 pm to 7:00 am. As a result, Wise worked an eight hour shift "F" position, from 3:00 pm to 11:00 pm. He quickly realized that he would use up his sixty hours unpaid leave, so he approached his supervisor, Kevin Cash, in February 2002 about obtaining an accommodation for observance of the Sabbath. Wise and Cash discussed his request with Human Resource Manager, Dennis Jozwiakowski, who reviewed Wise's seniority status to determine if he could be moved to another job or shift. The only shift that would have accommodated Wise was the Monday through Friday day shift from 7:00 am to 3:00 pm, which was the most desired shift. Wise did not have the requisite seniority for such a move without forcing Firestone to breach the seniority provision of the CBA, nor did he have the appropriate skill set to transfer into other open positions. As a result of his investigations, Jozwiakowski said that Wise would have to use his floating holidays, vacation days, and the sixty hours leave to cover any absences. Cash also made additional efforts to accommodate Wise by permitting him to take additional vacation in half-day segments without eating away his sixty hours of leave.

On April 25, 2002, Cash advised Wise that he had used twenty-four of the sixty no-fault attendance hours, on July 23, 2002 that he had exceeded thirty-six hours, and on September 18, 2002 that he exceeded forty-eight hours. On September 3, 2002, Wise requested an unpaid leave of absence for religious observance for the Day of Atonement (September 16th) and the Feast of

4

Tabernacles (September 20th-29th). Jozwiakowski and Employee Relations Manager, Tom Kirksey, reviewed the request and options available to accommodate Wise. As with Wise's Sabbath request, the absence would force other employees to work overtime. They informed Wise that he could use his remaining leave, but otherwise denied his request for an additional unpaid leave of absence.

Knowing his request had been denied, and knowing that he did not have enough leave time remaining, Wise did not come to work on the days requested. On September 20, 2002, Wise missed his sixty-first hour of work, and his termination occurred shortly thereafter.

ANALYSIS

A motion for summary judgment shall not be granted unless the Court determines that there is no genuine issue of material fact to be tried. Fed. R. Civ. P. 56(c). In making that determination, the Court is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

A.   Religious Discrimination under Title VII

In order to prove discrimination in a religious accommodation case, Wise must employ the burden-shifting proof-scheme first articulated in McDonnell Douglas Corp v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). The elements of a prima facie religious accommodation claim are (1) the plaintiff has a bona fide religious belief that conflicts with the employment requirement, (2) that he or she informed the employer of this belief, and (3) that he or she was disciplined for failure to comply with a conflicting employment requirement. Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1019 (4th Cir., 1996). "If the employee establishes a prima facie case, the burden then shifts

5

to the employer to show that it could not accommodate the plaintiff's religious needs without undue hardship." Id.

For purposes of this motion for summary judgment, Firestone concedes that Wise has established a prima facia case of religious discrimination. Accordingly, the burden shifts to Firestone to show that it either provided reasonable accommodation or could not accommodate Wise's religious beliefs without undue hardship. The Court finds that Firestone has sufficiently shown that it provided reasonable accommodation for Wise's religious beliefs.

B.      Title VII's Requirement For Reasonable Religious Accommodation

Title VII's central provisions make it an unlawful employment practice for an employer "... to discriminate against any individual with respect to his ... religion ...", §703(a)(1), 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to *reasonably accommodate* an employee's or prospective employee's religious observance or practice *without undue hardship* on the conduct of the employer's business." § 701(j), 42 U.S.C. § 2000e(j). (Emphasis added).

As stated by the Supreme Court in Ansonia Board of Education v. Philbrook,"[w]e find no basis in either the statue or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligations." 479 U.S. 60, 68, 107 S. Ct. 367 (1986). If an employer has provided a reasonable accommodation, there is no need to determine whether there is an undue hardship on the employer. Id. at 69.

The United States Supreme Court has found employers' pre-existing policies to constitute reasonable religious accommodation. See e.g. TransWorld Airlines v. Hardison, 432 U.S. 63, 97 S.

6

Ct. 2264 (1977) and Philbrook, 479 U.S. 60 (1986). The EEOC Guidelines on Discrimination Because of Religion, 29 C.F.R. § 1605.2 (2006) provides examples of institutional policies that constitute a reasonable accommodation, such as shift-swapping and floating holidays. 29 C.F.R § 1605.2(d)(i) and (ii).

Here, Firestone established policies that the Court finds reasonable. First, Firestone's seniority system is a reasonable accommodation. In Hardison, the Supreme Court held that the pre-existing seniority system itself constituted a reasonable accommodation: "it appears to us that the system itself represented a significant accommodation to the needs, both religious and secular, of all of TWA's employees." 432 U.S. at 78. The fact that Wise does not currently benefit from the seniority system does not negate the reasonableness of the accommodation.

Second, the Supreme Court specifically held in Philbrook that a school board's unpaid leave policy for holy day observances that exceeded the amount allowed by the CBA would generally be a reasonable accommodation. Id. at 70. Likewise, Firestone's unpaid leave policy of up to sixty hours is, in itself, a reasonable accommodation.

Third, allowance of shift-swapping can constitute a reasonable accommodation. See Miller v. Drennon, 966 F.2d 1443, 1992 WL 137578, at *3 (4th Cir. Jun 19, 1992) (per curium (unpublished table decision) (citing Brener v. Diagnostic Ctr. Hosp., 671 F.2d 141 (5th Cir. 1982)) (a hospital's allowing pharmacists to trade shifts was a reasonable accommodation); see also United States v. City of Albuquerque, 545 F.2d 110 (10th Cir. 1976) (allowing firefighters to avoid objectionable shifts by taking vacation leave, unpaid leave, and by voluntarily trading shifts was found to be a reasonable accommodation). Additionally, 29 C.F.R. §2605.2(d)(1)(I) provides in part, "Reasonable accommodations without undue hardship is generally possible where a voluntary

7

substitute with substantially similar qualifications is available. One means of substitution is the voluntary swap." Here, there is a factual dispute as to whether Cash took additional efforts to find other employees to swap shifts with Wise, but there is no evidence that shift-swapping was discouraged in any way. The Supreme Court has also recognized the importance of "bilateral cooperation" on behalf of the employee. Philbrook, 479 U.S. at 69, (citing to Brener v. Diagnostic Center Hospital, 671 F.2d 141, 146 (5th Cir. 1982) and American Postal Workers Union v. Postmaster General, 781, F.2d 772, 776 (9th Cir. 1986)). Specifically addressing shift-swapping policies, the oft-cited Brener case provides, "Although the statutory burden to accommodate rests with the employer, the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employee." Brener, 671 F.2d at 146. Wise stated in his deposition that after beginning his new shift around February of 2002, he did not attempt to use the shift-swapping policy. An employer can not be expected to provide additional accommodations for employees when the pre-existing accommodations are ignored. Title VII simply does not bestow upon the employee a right to accommodation shop; he must first use the means available to the best of his ability.

Fourth, Firestone provides its eight hour shift employees with three floating holidays. The CBA contains no restrictions on the purpose for which these holidays can be taken. The EEOC Guideline, 29 C.F.R. §2605.2(d)(1)(2), provides numerous examples of how flexible scheduling can constitute a reasonable accommodation, among which is floating or optional holidays. Here, Wise used his three floating holidays after specifically being informed by Jozwiakowski and Cash that floating holidays could be used for religious observances.

Plaintiffs' core argument, that Firestone is required to eliminate the conflict unless an undue

8

burden prevents it from doing so, is untenable. The Fourth Circuit has held that an employer "is not required to provide absolute accommodation, only a 'reasonable accommodation.'" Miller, 1992 WL 137578, at *3 (citing Philbrook 479 U.S. at 69). See also Philbrook 479 U.S. at 70. In the context of an employment relationship controlled by a CBA-provided neutral system of seniority, the Supreme Court has refused to require that such a system give way to the religious needs of an employee:

> Collective bargaining, aimed at effecting workable and enforceable agreements between management and labor, lies at the core of our national labor policy, and seniority provisions are universally included in these contracts. Without a clear and express indication from Congress, we cannot agree with Hardison and the EEOC (the plaintiffs) that an agreed-upon seniority system must give way when necessary to accommodate religious observances.

Hardison, 432 US at 79.

Plaintiff argues that the Supreme Court in Philbrook mandated that a reasonable accommodation must totally eliminate the conflict. (Doc. No. 22: Plaintiff Memo. at 9). This argument misreads Philbrook. There the Court found factually that "[t]he provision of unpaid leave," i.e., the particular policy in the *Philbrook* case, "eliminates the conflict. . . ." Philbrook 479 U.S. at 70. The Court also found that in enacting §701(j), Congress "did not impose a duty on the employer to accommodate at all costs." Id. Firestone's pre-existing policies of a seniority system, unpaid leave program, shift-swapping and floating holidays combine to constitute reasonable accommodations, even though the conflict was not eliminated.

The EEOC's subordinate argument is equally unavailing. It interprets Cooper v. Oak Rubber Co., 15 F.3d 1375 (6th Cir. 1994) to hold that use of vacation time to resolve a conflict is not reasonable. Cooper merely held that accrued vacation time alone is an insufficient accommodation.

9

Use of accrued vacation time in conjunction with other accommodations would not run afoul of Cooper. If Cooper could be read to bar use of vacation time per se, it is not controlling authority; and to the extent that it is inconsistent with the holdings of the Supreme Court in Hardison and Philbrook, it is not persuasive either.

A reasonable accommodation by pre-existing policy pursuant to the CBA is present in this case. The Court finds that Firestone went beyond mere reliance on the CBA which provided for three half-day vacations so long as the absences were under thirty-six hours of no-fault attendance. In an attempt to accommodate the plaintiff, his supervisor Cash permitted Wise to take five extra half-day vacations. Additionally, Firestone paid overtime to other employees who covered Wise's shift.

D.      Undue Hardship

Plaintiffs' insistence on absolute accommodation misreads the law and places on the employer an undue burden. It arguably requires either a shift preference in violation of the CBA, or the cost of replacement for the Sabbath and Holy Day hours. An employer is not required to violate a seniority preference system to accommodate the religious needs of an individual. On the contrary, a seniority system was recognized as a reasonable accommodation itself. Hardison, 432 U.S. at 78. To grant Wise a shift preference would thus create an undue burden on the company and other employees by bumping an employee who enjoys his rights earned within the seniority system. To this extent it represents an "over-accommodation" arguably violative of the rights of other employees.

Second, to grant Wise extra leave of absence time beyond the sixty hours given to other employees of his status could constitute religious discrimination in favor of Wise and against others.

"We will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath." Hardison, 432 U.S. at 85.

Last, hiring replacement employees at overtime rates constitutes an undue hardship in that it results in more than a *de minimis* cost to the employer. Hardison, 432 U.S. at 84. "*De minimis* cost" is defined as "costs similar to the regular payment of premium wages of substitute . . . ." 29 C.F.R § 1605.2(e)(1) (citing to Hardison, 432 U.S. at 84).

Accordingly, complete resolution of the conflict between Wise and Firestone would inevitably result in an undue hardship beyond the requirements of Title VII.

## CONCLUSION

The plaintiffs prima facie case of discrimination has been rebutted by Firestone. Because no reasonable juror could conclude that Firestone did not provide reasonable accommodation for Wise's religious observances in accordance with Title VII requirements, the Court grants summary judgment for the defendant.

**THEREFORE, IT IS ORDERED** that Bridgestone Americas Holding, Inc., is dismissed and **FURTHER ORDERED** that Firestone's motion for summary judgment (Doc. No. 18) is **GRANTED**. This matter is dismissed with prejudice in its entirety.

Signed: September 13, 2006

Robert J. Conrad, Jr.
Chief United States District Judge